UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| C.F. as Parent and Next Friend to M.F., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 20-12259-LTS |
| AMY SCOLARO, et al., | ) ) ) | |
| Defendants. | ) ) | |

ORDER ON PENDING MOTIONS (DOC. NOS. 42, 54, 56, 64, 67, 99, 102, 105, 108)

February 8, 2022

SOROKIN, J.

On December 3, 2020, Plaintiff C.F., parent of M.F.[1] brought suit against various individuals and entities such as the Marshfield Public School District ("Marshfield") and Massachusetts Bureau of Special Education Appeals ("BSEA")[2] for several alleged violations of state and federal law.[3]  Doc. No. 1.  Pursuant to Court Order, Doc. No. 23, the Court restricts its analysis of the pending motions solely to the judicial review claim of the BSEA decision—that is, whether the 2020 IEPs provided a free and appropriate education ("FAPE") in the least restrictive environment ("LRE") and whether C.F. should be reimbursed for M.F.'s unilateral placement in Middlebridge School ("Middlebridge").  C.F. moved for summary judgment (Doc.

---

[1] Pursuant to Court Order, the Parent shall be referred to as "C.F." and her child as "M.F."  Doc. No. 62.
[2] The individual defendants being sued in both individual and official capacities include: Amy Scolaro, Erin Wiggin, Jeffrey Granatino, Robert Keuther, Amanda Benard, David Kaminski, and Nancy McLellan.  Doc. No. 1 at 4.  The entities being sued include the Marshfield School Committee, Marshfield Public School District, Town of Marshfield, and the Massachusetts Bureau of Special Education Appeals.  Id.
[3] A list of all of C.F.'s various claims is detailed in her Complaint.  Id. at 5-6.

No. 54) on that claim, and Defendant Marshfield opposed that motion and cross-moved for summary judgment (Doc. No. 64).  Defendant BSEA also opposed C.F.'s motion (Doc. No. 71).

The Court has carefully reviewed the parties' submissions and arguments and applied the familiar summary judgment standard, drawing all reasonable inferences and resolving disputes of genuine material fact in favor of the non-moving party.  Accordingly, the Court ALLOWS Marshfield's Motion for Summary Judgment (Doc. No. 64) and DENIES C.F.'s Motion for Summary Judgment (Doc. No. 54) as to the judicial review claim.

I.    FACTUAL BACKGROUND[4]

C.F.'s child, M.F., has disabilities which include, but are not limited to, chronic migraines.  M.F. has been on an Individual Education Program ("IEP") since second grade, Doc. No. 30 at 357, and all concerned parties agree that she qualifies as a special needs student or for special needs services.[5]  In fourth grade, C.F. and M.F. moved to Marshfield.  Id.  M.F.'s last accepted IEP was for her eighth-grade year from 2017-2018.  Id.  Then, she entered Marshfield High School as a ninth grader in September 2018,[6] but shortly after began experiencing migraines.  Id.  Due to the increasing severity and frequency of these migraines, home tutoring was set up in January 2019 after M.F.'s neurologist filed the relevant form.  Id. (citing Doc. No. 30-3 at 231).  M.F. returned to Marshfield High School in February 2019 and attended the Returning After Missing School ("RAMS") program.  Id.  On March 8, 2019, M.F.'s neurologist

---

[4] Unless specifically noted, these facts are undisputed.  "Where material disputes remain, they are highlighted in the court's legal analysis and viewed in the light most favorable to the non-moving party."  Davis v. Murphy, No. 13-CV-11900-IT, 2018 WL 1524532, at *1 (D. Mass. Mar. 28, 2018).

[5] No party has argued otherwise.

[6] Based off the record before the Court, the last accepted IEP was for M.F.'s eighth-grade year from 2017-2018, and no new IEP was later accepted.  Doc. No. 30-2 at 25.  The active IEP for M.F.'s ninth grade in the 2018-2019 school year was seemingly then the stay-put IEP that expired on 1/3/2018.  Id.

submitted an updated tutoring form to school officials, and the tutoring continued. Doc. No. 66 at 12.

That summer on June 5, 2019, the parties participated in a BSEA meditation in hopes of agreeing on a plan for M.F. to catch up on her ninth-grade curriculum. Doc. No. 30 at 357 (citing Doc. No. 30-3 at 544). The parties agreed that the school would provide seventy-two hours of tutoring during the summer of 2019. Id. (citing Doc. No. 30-3 at 545). The school ultimately provided ninety-one hours of tutoring that summer through two certified special education teachers.[7] Id. at 358.

On June 18, 2019, Marshfield proposed an IEP for June 2019 – June 2020 ("June 2019 IEP"). Doc. No. 30-2 at 24-25. On August 28, 2019, Marshfield informed C.F. that it was making unilateral changes to M.F.'s IEP, which included doubling her special education strategies class, removing her study hall period, and adding a special education teacher in all of her classes to tutor her. Doc. No. 30 at 358. C.F. filed a BSEA appeal in response, which she later withdrew. Id. On September 10, 2019, Marshfield indicated to C.F. that it would return M.F.'s schedule back to the way it was, and although the special education teacher would remain in M.F.'s classes, they would not tutor M.F. Id. When M.F. returned to school on September 11, 2019, she was allegedly not allowed in her study hall class after which C.F. called the principal who said he would personally inform the study hall teacher that M.F. was to be in that class. Id.

---

[7] C.F. argues that Marshfield breached the mediation agreement numerous times in a variety of ways. See, e.g., Doc. No. 55 at 12. C.F. does not allege, however, that Marshfield provided fewer tutoring hours than agreed to, and so that fact remains undisputed. As to the breaches C.F. does allege, she does not point to evidence in the record except as it potentially relates to the chorus assignments. See id. Even assuming Marshfield breached the agreement as it relates to the chorus assignments, such a breach does not impact the Court's conclusion on the narrow question before it in this Order.

That night on September 11, 2019, M.F. experienced excruciating pain, and this cycle continued for the next few months, so M.F. did not return to school and was home tutored until December 2019.  Id.  On December 23, 2019, M.F. began a six-week partial hospitalization program at the Boston Children's Hospital's Pediatric Pain Rehabilitation Center ("PPRC").  Id. at 359; Doc. No. 66 at 13.

Later, at an IEP team meeting on January 7, 2020, C.F. stated her intention to unilaterally enroll M.F. in Middlebridge School located in Narragansett, Rhode Island.  Doc. No. 30 at 359. The school district then proposed an IEP for January 2020 – January 2021 ("January 2020 IEP"). Id.; Doc. No 30-2 at 42.  This IEP placed M.F. at Marshfield High School but stated in relevant part:

> The district is also proposing that Marshfield High School is no longer the appropriate educational setting for [M.F.]. However, [M.F.] is a student who could be educated at Marshfield High School. However, the district recognizes that [M.F.] may be more comfortable in a high school within one of our surrounding communities.

Doc. No. 30-2 at 43.

That same day C.F. granted permission to Marshfield to share M.F.'s information with nearby schools.  Id. at 153.[8]  Hanover Public Schools accepted her on January 22, 2020,[9] and Duxbury Public Schools accepted her on January 24, 2020 pending an accepted IEP, and these

---

[8] C.F. gave permission to share M.F.'s information with Cohasset, Nowell, Pembroke, Scituate, Duxbury, Hanover, and Hingham Public Schools.  Doc. No. 30-2 at 153.

[9] C.F.'s disputes this by arguing that the "Hanover Public Schools acceptance letter was backdated to one day prior to the Middlebridge School's 1/23/2020 acceptance letter" and that Marshfield withheld such evidence from her.  Doc. No. 55 at 3-4.  First, the evidence C.F. seeks to admit, Doc. No. 57-2, shows that Hanover had verbally spoken to Marshfield about M.F. prior to their January 27, 2020 email to Marshfield which attached an acceptance letter dated on January 22, 2020.  Second, even if Hanover's letter was backdated, something unproven, C.F. has not shown that Marshfield caused that to happen.  Third, C.F. learned of Hanover's acceptance, along with many other schools' acceptances, before M.F. began attending Middlebridge on February 3, 2020, which for the analysis are the relevant dates.  Finally, C.F. has not shown that any of these nearby schools would not provide FAPE.

acceptances were communicated to C.F. on January 28, 2020.  Id. at 154, 157-58.  Norwell

Public Schools accepted her on January 23, 2020 pending an accepted IEP, and this was

communicated to C.F. on the same day.  Id. at 155-56.

On January 23, 2020, Middlebridge accepted M.F.  Doc. No. 30 at 359.  On January 31,

2020, M.F. was discharged from the hospital, and PPRC sent Middlebridge a recently completed

report on M.F. describing her condition and best practices to help her manage the chronic pain.

Doc. No. 30-2 at 162.  C.F. unilaterally enrolled M.F. at Middlebridge who began attending on

February 3, 2020.  Doc. No. 30 at 359; Doc. No. 30-1 at 186.  C.F. shared the PPRC report with

Marshfield on February 5, 2020 which led to the IEP team meeting again on February 11, 2020

to discuss the report and review M.F.'s acceptances by nearby schools.  Doc. No. 30-2 at 161.

This meeting led to an amended proposed IEP for February 2020 – January 2021 ("February

2020 IEP").  Id. at 92.  This IEP reiterated Marshfield's belief that "the recommendations

outlined by the PPRC are accommodations and modifications that can be provided within

Marshfield High School," but C.F. disagreed, and Marshfield proposed two additional schools to

send M.F.'s information to.  Id. at 93.  C.F. did not consent to sending information to these two

schools, so Marshfield sent redacted referral packets.  Doc. No. 30 at 359.  Later, on or around

February and March of 2020, the Pilgrim Area Collaborative accepted M.F., and the South Shore

Educational Collaborative indicated that they would be able to accommodate M.F. subject to

receiving certain additional information.  Doc. No. 30-2 at 163-64.

After receiving these acceptances, C.F. decided to keep M.F. at Middlebridge as a day

student from February 3 to March 13, 2020 when the COVID-19 crisis moved classes online.

Doc. No. 30 at 359.  C.F. indicated that M.F. would return to Middlebridge as a residential

student for the 2020-2021 school year.  Id.  The Court sets out further facts as necessary in the

course of discussing the individual issues.

II.    PROCEDURAL HISTORY

After a series of BSEA appeals involving C.F. and Marshfield, all of which the parties

withdrew at various times, C.F. filed another BSEA appeal on December 26, 2019 which

remained open and is the subject of this Order.[10]  Id. at 27, 356-57.  C.F. contended essentially

before the BSEA that (1) Marshfield's proposed IEPs did not offer M.F. FAPE in the LRE and

(2) Middlebridge offered FAPE in the LRE and thus Marshfield must pay for it. After a five-day

---

[10] In the December 26, 2019 filing before the BSEA, C.F. challenged the June 2019 IEP, among
other matters.  Doc. No. 30 at 31.  After the filing but before the BSEA hearing, Marshfield
proposed two additional IEPs, (collectively, "2020 IEPs").  Id. at 358-59.  Although C.F. argues
that the 2020 IEPs were not properly before the BSEA, Doc. No. 55 at 16, she did not challenge
the consideration of the January 2020 IEP before the BSEA, which superseded the June 2019
IEP, and so that argument is waived as to the January 2020 IEP.  Doc. No. 30 at 238.  As to the
February 2020 IEP, C.F. argued that it was not properly before the BSEA since the most recent
proposed IEP prior to M.F.'s enrollment at Middlebridge was the January 2020 IEP.  Id.  To
begin, C.F. does not sufficiently explain why this is relevant to the FAPE analysis. Marshfield
could of course amend the January 2020 IEP in light of the new information obtained from the
PPRC report it had recently received.  Next, even if C.F.'s argument is relevant to the FAPE
analysis, Marshfield proposed the February 2020 IEP because C.F. sent it the PPRC report on
February 5, 2020, even though she was aware of the report days earlier.  Id. at 359; Doc. No. 30-
1 at 186.  Accordingly, C.F. cannot argue the January 2020 IEP is deficient for not considering
the PPRC report (not issued until later), Middlebridge is the proper placement pursuant to the
PPRC report, that Marshfield cannot revise its position in light of the PPRC report and that the
BSEA could not consider Marshfield's revisions in response rendered in the form of the
February 2020 IEP.   Importantly, C.F. has not shown she lacked a full and fair opportunity to
address these issues before the BSEA nor has she shown that the BSEA failed to consider these
issues. Thus, the Court determines that the January 2020 and February 2020 IEPs were properly
before the BSEA.  Insofar as C.F. argues that Marshfield erred in denying M.F. a 2018 and 2019
IEP, see, e.g., Doc. No. 55 at 21, C.F. has not pointed to evidence such as cites to the record,
affidavits, or declarations, to prove up this claim.  Even if the Court credited it, that may show
Marshfield previously violated the law or engaged in bad faith, but neither of those things affects
the question of whether the 2020 IEPs provided FAPE in the LRE in this case in which the IEPs
were to be administered in another separate school district.

hearing on March 3 and 4, 2020 and June 2, 4, and 18, 2020 accompanied by the submission of

several thousand pages of documents, the BSEA hearing officer concluded the following:

1. MPS' January 7, 2020 - January 6, 2021 IEP, calling for placement in a neighboring LEA, is appropriate to address Ruth's special education needs so as to provide her FAPE in the LRE. The PPRC report, received 1 month after this IEP was proposed, should be appended to said IEP.

2. MPS' February 11, 2020 - January 6, 2021 IEP, calling for placement in a collaborative, is appropriate to address Ruth's special education needs so as to provide her FAPE, albeit in a more restrictive setting than the January 7, 2020 IEP.

3. MPS is not financially responsible for Parent's unilateral placement of Ruth at Middlebridge as a day student from February 3, 2019 to the end of the 2019-2020 school year.

4. MPS is not financially responsible for Parent's prospective unilateral placement of Ruth as a residential educational student at Middlebridge for the 2020-2021 school year.

5. Parent is not entitled to compensatory services based upon the instant record.

6. MPS is not entitled to court ordered attorney's fees based upon the facts of this case.

Id. at 370-71.

On December 3, 2020, C.F. filed suit in state court appealing the BSEA decision. Doc.

No. 1. Defendants removed the case to this Court on December 21, 2020. Id. Early in this case,

the Court stayed all claims against the Defendants except for the claim of judicial review of the

BSEA decision. Doc. No. 23. C.F. moved for summary judgment (Doc. No. 54) on that claim,

and Defendant Marshfield opposed that motion and cross-moved for summary judgment (Doc.

No. 64) followed by Defendant BSEA's opposition to C.F.'s motion as well (Doc. No. 71). The

Court adjudicates the two summary judgment motions applying the familiar legal standard

governing summary judgment. The Court turns to Marshfield's motion first, and as to this

motion, resolves all disputed issues of material fact and draws all reasonable inferences in favor

of Plaintiff.

I.    MARSHFIELD'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 64)

Pursuant to the Individuals with Disabilities in Education Act ("IDEA"), "[t]he burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief."  Schaffer v. Weast, 546 U.S. 49, 62 (2005).  "[A]n IEP must address a handicapped student's needs "so as to assure his maximum possible development in the least restrictive environment consistent with that goal."  Roland M. v. Concord Sch. Comm., 910 F.2d 983, 987-88 (1st Cir. 1990) (quoting David D. v. Dartmouth Sch. Comm., 775 F.2d 411, 423 (1st Cir. 1985)).  "An IEP need not, however, offer the student 'an optimal or an ideal level of educational benefit[.]'"  Johnson v. Bos. Pub. Sch., 906 F.3d 182, 185-86 (1st Cir. 2018) (quoting Lessard v. Wilton Lyndeborough Coop. Sch. Dist., 518 F.3d 18, 23-24 (1st Cir. 2008)).

Here, the party seeking relief is C.F. who accordingly bears the burden of proving that neither of the 2020 IEPs provided FAPE in the LRE and that her unilateral placement at Middlebridge was appropriate.  In so evaluating, the Court applies an "intermediate standard of review" that the First Circuit has called "involved oversight."  Id. at 190 (citing Elizabeth B. v. Esposito, 675 F.3d 26, 36 (1st Cir. 2012)).  Under this standard a district court:

> reviews the administrative record, which may be supplemented by additional evidence from the parties, and makes an independent ruling based on the preponderance of the evidence. However, that independence is tempered by the requirement that the court give due weight to the hearing officer's findings. As a result, a district court's review falls somewhere between the highly deferential clear-error standard and the non-deferential de novo standard.

Id.

C.F. has not met her burden of proof.  IDEA embodies a preference for mainstreaming students with special needs, which refers "to the law's directive that states must ensure that disabled students are educated in the 'least restrictive environment,' and particularly that '[t]o the maximum extent appropriate, children with disabilities . . . are educated with children who are

not disabled.'" Id. at 191 (1st Cir. 2018) (quoting 20 U.S.C. § 1412(a)(5)(A)). In this case, the Court is not aware of, nor has C.F. pointed to, any education or medical expert who has opined that M.F. required a residential placement like the one Middlebridge offers, so the Court is not persuaded that "mainstreaming" should not be a goal in M.F.'s IEPs. In fact, the PPRC report emphasized the importance of "engag[ing] in as much normal functioning as possible, including attending school as consistently as possible and for the fullest day possible." Doc. No. 30-4 at 464.

Accordingly, both the January 2020 and February 2020 IEPs provided M.F. with FAPE in the LRE for many of the reasons described in the BSEA decision.[11] See Doc. No. 30 at 355-73. Given that the relationship between C.F. and Marshfield was, as the BSEA put it, "completely toxic, malignant, and beyond repair," id. at 367, the 2020 IEPs were to be implemented in nearby public school systems or collaboratives. See Doc. No 30-2 at 42, 161. Several other school systems accepted M.F. outright or contingent upon certain conditions such as acceptance of the proposed IEP.[12] See, e.g., id. at 154-58, 163-64. Marshfield communicated

---

[11] C.F. additionally argues that the 2020 IEPs did not provide FAPE because they did not mention that M.F. was hospitalized or the impact of COVID-19 which Marshfield was "required to do." Id. at 16. As to the latter, C.F. has not referenced any caselaw, regulations, or anything else in support of her position, especially given that the IEPs were created prior to the onslaught of the pandemic in the United States in March of 2020. As to the former, the 2020 IEPs describe M.F.'s condition in detail, even adding that "[s]he is currently under the care of medical professionals to address" her migraines. See, e.g., Doc. No. 30-2 at 48, 93 (adding that the "TEAM met to discuss the letter . . . from the Mayo Family Pediatric Pain Rehabilitation Center," or PPRC, and referencing M.F.'s School Management Plan and Keep Moving Plan).
[12] C.F. argues that because some these acceptances were made contingent upon acceptance of the proposed IEP, they were not appropriate since C.F. fundamentally disagreed with the IEP itself. First, the acceptance letter from Hanover Public Schools on its face does not suggest that it was contingent on C.F. accepting the proposed IEP. Id. at 154. Second, C.F.'s subjective disagreement with the IEPs on their own does not prove that the IEPs did not, in fact, provide FAPE in the LRE. In any event, both the BSEA and this Court have determined that the 2020 IEPs provided FAPE in the LRE, and so, C.F.'s argument fails for that reason alone.

these acceptances to C.F. <u>before</u> M.F. began her first day at Middlebridge on February 3, 2020.

<u>Id.</u> (showing that C.F. learned of acceptances on January 23 and January 28, 2020).[13]    Moreover,

the BSEA hearing officer correctly determined that at the time of placement, Middlebridge was

not "appropriate" as it was simply too far away.    <u>See</u> 603 Mass. Code Regs. § 28.06(8)(a); Doc.

No. 30 at 370 (describing that the "Massachusetts special education regulations mandate that no

student should be transported more than 1 hour each way [and] Mother has testified that it took

at least 1½ hours each way to travel to/from Middlebridge.").

   Three further issues require brief mention.  First, Marshfield argues that "[t]he District

provided appropriate tutoring and therefore, compensatory services were not owed."  Doc. No.

64 at 12.  C.F. claims M.F. is entitled to compensatory services because, among other things,

Marshfield (1) denied M.F. a 2018 and 2019 IEP; (2) failed to implement a stay put IEP since

September 2018; (3) unilaterally terminated M.F.'s education on October 8, 2019; (4)

unilaterally implemented unauthorized disability services; and (5) generally caused deprivation

of educational benefits.  Doc. No. 55 at 21.  C.F.'s argument suffers from both procedural and

substantive flaws.  Procedurally, C.F.'s statements are made in the form of argument, not

affidavits, declarations, or cites to the record, for example, which are necessary to be considered

evidence in support of a motion for summary judgment.  Fed. R. Civ. P. 56(c).  Even if the Court

construed these arguments liberally despite C.F. being a licensed attorney, her arguments fail

substantively.  To begin, Marshfield provided home-hospital services.  <u>See, e.g.</u>, Doc. No. 30-1

at 429.  Then, the parties agreed to seventy-two hours of tutoring in the summer of 2019 to help

M.F. with her ninth-grade curriculum, and Marshfield surpassed that by ultimately providing

ninety-one hours.  Doc. No. 30 at 358.  Furthermore, although there were no new IEPs for 2018

---

[13] <u>See supra</u> note 9.

and 2019, Marshfield proposed an IEP for the 2019-2020 year,[14] and the active IEP was a stay-put IEP.  Doc. No. 30-2 at 25.  Finally, C.F. has not shown, as she must, specific services rendered for which she is entitled to compensation.  Accordingly, the Court agrees, applying the governing standard of review, that no compensatory services are owed just as determined by the BSEA.

Next, Marshfield argues that the BSEA hearing officer "properly denied the case accelerated status and granted the postponement request" because C.F. "did not claim . . . that a delay in having a due process hearing would jeopardize the safety of the Student or others or that a delay would result in harm.  Doc. No. 64 at 9-10.  C.F.'s hearing request form, however, expressly stated that "further postponement of the placement matter is likely to materially harm the Child from both an academic and a medical perspective[.]"  Doc. No. 30 at 30.  That said, the BSEA hearing officer determined after a conference call that the accelerated hearing request did not meet the requirements, id. at 74, and the Court is not persuaded, under the applicable standard of review, that the BSEA decision was incorrect.  Even drawing all inferences in favor of C.F. for this motion, she has not shown true harm resulting from the postponement because by the time M.F. was discharged from the hospital, she knew other public school systems had agreed to accept M.F. under the January 2020 IEP.  Doc. No. 30-2 at 154-58.

Finally, Marshfield argues that C.F.'s discovery allegations fail for two reasons: they are (1) not properly preserved because she never raised these issues to the BSEA hearing officer, and (2) there is no basis in fact for these allegations.  Doc. No. 64 at 13-14.  C.F. states that certain evidence was "concealed from Plaintiffs through the entirety of the BSEA hearing," and

---

[14] The June 2019 IEP is not before the Court for the reasons described previously.  See supra note 10.

proceeds to list such evidence.  See, e.g., Doc. No. 55 at 3-4.  Marshfield responds that any

additional documentation was provided on February 24, 2020 pursuant to C.F.'s request thus

giving C.F. ample time to use the disclosed information in the BSEA proceeding and that C.F.

did not raise any further discovery concerns in front of the BSEA hearing officer.  Doc. No. 64 at

14.  Even assuming, without deciding, that the discovery allegations were properly preserved,

C.F. has not adequately shown how the allegedly withheld documents would change the Court's

conclusion that the 2020 IEPs provide FAPE in the LRE.[15]  After de novo review of these

documents that C.F. seeks to admit, see Doc. No. 57, the Court concludes that they would not

change the Court's determination.  Such documents may be more relevant for C.F.'s other claims

which have been stayed and are not the subject of this Order.

 For the foregoing reasons, Marshfield's Motion for Summary Judgment (Doc. No. 64) is

ALLOWED to the extent described herein.

 II. C.F.'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 54)

 The Court now turns to C.F.'s motion, and as to this motion, resolves all disputed issues

of material fact and draws all reasonable inferences in favor of Defendants.  The Court begins by

noting three things: (1) C.F. raises arguments in her motion that are relevant to other claims

which have been stayed, and therefore the Court does not consider them at this time, see Doc.

---

[15] C.F.'s arguments that such documents would have made the hearing officer "take[] a different
perspective on witness/evidence credibility . . . or removed [Marshfield's] decision-making
power over the Child's education" among other remedial actions are not persuasive.  Doc. No. 55
at 19.  As the BSEA hearing officer described, the parties submitted thousands of pages for the
hearing, and these documents adequately showed what the documents C.F. seeks to admit show:
that the relationship between the parties was "toxic, malignant and beyond repair."  Doc. No. 30
at 367.  C.F. does not demonstrate how these documents would have changed the officer's
determination that the 2020 IEPs provided FAPE in the LRE, particularly when the documents
C.F. seeks to admit largely pertain to Marshfield's actions and/or inactions, and the 2020 IEPs
largely pertain to FAPE at nearby schools.  C.F. has not been "materially prejudiced"
accordingly.  Doc. No. 55 at 19.

No. 23; (2) C.F.'s motion suffers from a significant procedural flaw in that it is largely devoid of evidence, such as cites to the record, affidavits, or declarations, required under Fed. R. Civ. P. 56(c) and L.R. 56.1.[16]  Arguments are not evidence, but the Court nonetheless proceeds to consider the motion after construing it liberally.  Given the Court's resolution of Marshfield's Motion for Summary Judgment, C.F.'s Motion for Summary Judgment (Doc. No. 54) is DENIED as it relates to whether the 2020 IEPs provided FAPE in the LRE.  Because the Court concluded they do in Marshfield's Motion, Marshfield does not need to compensate C.F. for M.F.'s education at Middlebridge.

Several further issues require brief mention.  Although the BSEA hearing officer did not address the claims that Marshfield discriminated and retaliated against C.F. and M.F., no remand is required for two reasons.  First, C.F. has such claims pending in this case that are not addressed in this decision and are not dependent upon the resolution by the BSEA.  Additionally, the evidence of alleged prior discrimination and retaliation by Marshfield does not bear upon whether the 2020 IEPs to be implemented in another school system offered M.F. FAPE in the LRE.  This is why even assuming, without deciding, that the discrimination and retaliation claims could in some circumstances prevent FAPE in the LRE, the fact that the BSEA hearing officer did not address these claims in its decision does not prejudice C.F.

---

[16] C.F. submitted a Statement of Material Facts to the Court on December 8, 2021 but dated it for August 2021.  Doc. No. 94.  This statement was not attached to C.F.'s Motion for Summary Judgment (Doc. No. 54) made months ago, and Marshfield argues that the responses attributed to it in the filing are not actually its responses.  Doc. No. 95 at 1 n.1 (describing that "Plaintiff's representation to the Court that these responses are from Marshfield to a Statement of Material Facts is false and inaccurate. The District did not provide these responses to a Statement of Material Facts and was not provided with this Statement of Material Facts to respond to until the filing.").  C.F. does not provide any sufficient evidence that the statements she attributes to Marshfield in Doc. No. 94 are in fact Marshfield's.  Accordingly, the Court does not consider Doc. No. 94 in its analysis.

Next, C.F. demands a default judgment against Marshfield because it allegedly "prejudicially concealed/spoliated evidence that is relevant and material to the underlying issues of this case, after their duty to preserve and/or produce such information/evidence was triggered." Doc. No. 55 at 2, 20. This request is DENIED for the reasons described in the Court's resolution of Marshfield's Motion as it relates to the discovery allegations. See supra Part I. Defendants answered and responded. There is no basis for a default judgment. Insofar as C.F. requests sanctions for the alleged spoliation or for other reasons, this request is also DENIED. C.F. has not established misconduct sufficient to trigger a default judgment or sanctions.

Finally, C.F. briefly alludes to the state-created danger doctrine, arguing that Marshfield "exposed Plaintiffs to state-created danger by and through their pervasive disregard for the safety and well-being of the Child." Doc. No. 55 at 20. This theory of liability is only available in "narrow circumstances" and even assuming, without deciding, that this case falls within such circumstances, C.F. has not shown that Marshfield's actions should "shock the conscience of the Court." Roe v. Lincoln-Sudbury Reg'l Sch. Dist., No. CV 18-10792-FDS, 2021 WL 1132256, at *36 (D. Mass. Mar. 24, 2021) (quoting Rivera v. Rhode Island, 402 F.3d 27, 35 (1st Cir. 2005)). The Court, at least with respect to the BSEA claim presently under consideration, is not persuaded that Marshfield's actions are "truly outrageous, uncivilized, and intolerable." Id. (quoting Hasenfus v. LaJeunesse, 175 F.3d 68, 72 (1st Cir. 1999)).

III.    OTHER PENDING MOTIONS (DOC. NOS. 42, 56, 67, 99, 102, 105, 108)

As to C.F.'s Motion for Pendency Placement and Preliminary Injunction (Doc. No. 42), this request is DENIED in light of the Court's Order allowing Marshfield's Motion for Summary Judgment (Doc. No. 64) which addresses the merits of the underlying issues. Insofar as the

14

Motion seeks stay-put placement at C.F.'s unilateral placement of M.F. at Middlebridge, the request is denied because the Court has concluded that Middlebridge was not an appropriate placement under the IDEA for M.F.  Moreover, IDEA provides that "during the pendency of any proceedings conducted pursuant to this section, <u>unless the State or local educational agency and the parents otherwise agree</u>, the child shall remain in the then-current educational placement of the child[.]"  20 U.S.C.A. § 1415(j).  Here, the parties have not agreed to M.F.'s placement at Middlebridge—instead, C.F. unilaterally placed her daughter there.  Cf. <u>E.T., a minor, by his parents v. Bureau of Special Educ. Appeals</u>, 169 F. Supp. 3d 221, 241 (D. Mass. 2016).  Insofar as the Motion seeks a preliminary injunction, the Court has resolved the merits of the underlying issues in this Order, and so the Motion (Doc. No. 42) is DENIED.

As to C.F.'s Motion to Supplement the Record with additional documents (Doc. No. 56), this request is DENIED.  "[A] party seeking to introduce additional evidence at the district court level must provide some solid justification for doing so."  <u>Roland M.</u>, 910 F.2d at 996.  The proposed documents were not offered at the BSEA, and the Court has reviewed the documents <u>de novo</u> and finds that they are immaterial to the resolution of the pending motions.  Put another way, even considering the documents, the Court's resolution is the same.

As to Marshfield's Motion to Strike Plaintiff's Statement of Material Fact (Doc. No. 67), this request is DENIED.  C.F.'s "statement of material facts" contained within her Motion for Summary Judgment (Doc. No. 55) is treated as argument given that it is largely devoid of citations to the record and because many of the alleged "facts" are presented as arguments.  C.F.'s request to amend her filings by separating her Statement of Material Facts, Motion for Summary Judgment, and Motion for Sanctions contained within Doc. No. 55 is also DENIED.

15

The parties are reminded that the Administrative Record controls the resolution of the judicial review claim at issue here.

Doc. No. 99 is TERMINATED AS MOOT in light of C.F.'s Amended Motion to Strike (Doc. No. 102).

The Court ALLOWS Marshfield's Motion for Leave to File Amended Response (Doc. No. 108) to C.F.'s Amended Motion to Strike (Doc. No. 102). As to C.F.'s Amended Motion to Strike and Motion to Seal (Doc. No. 102), this request is DENIED.  Insofar as C.F. requests that the Office of the Civil Rights ("OCR") decision be struck from evidence, see Doc. No. 102 at 2, Marshfield responded that it "does not seek to supplement the administrative record or otherwise introduce the . . . OCR . . . decision into evidence" for the summary judgment motions.  Doc. No. 107 at 2.  The Court does not consider the OCR decision in its Order today as it has not been admitted into evidence.  Insofar as C.F. seeks to admit emails under seal that discuss her objections to admitting the OCR letter into evidence before the BSEA, that request is also DENIED.  The Court is not remanding this case to the BSEA, and therefore neither the OCR decision nor emails surrounding whether to admit it are relevant for this Order.

As to C.F.'s Motion for a Protective Order (Doc. No. 105), this request is DENIED WITHOUT PREJUDICE because C.F. did not submit a proposed protective order nor did she sufficiently explain with evidence why a protective order is necessary at this time, i.e., how Marshfield is allegedly continuing to "misus[e]/improperly disseminat[e] Plaintiffs' confidential information."  Doc. No. 106 at 21.  If C.F. intends to renew this motion later, it must include (1) precisely what relief she seeks, for example by including a proposed protective order, and (2) citations to evidence showing continuing misuse of confidential information to provide a basis

for the protective order.  Insofar as this motion rehashes arguments made in the summary judgment papers, the Court has already resolved those issues.

IV.    CONCLUSION

Marshfield's Motion for Summary Judgment (Doc. No. 64) is ALLOWED, and C.F.'s Motion for Summary Judgment (Doc. No. 54) is DENIED as it relates to the judicial review claim only.  Doc. Nos. 42, 56, 67, and 102 are also DENIED.  Doc. No. 99 is TERMINATED AS MOOT.  Doc. No. 105 is DENIED WITHOUT PREJUDICE.  Doc. No. 108 is ALLOWED.

Within seven days the BSEA shall file a joint status report on behalf of all of the parties setting forth their joint or separate positions regarding the following issues: (1) the schedule to govern the presently stayed claims; and (2) whether to enter a separate and final judgment on the claim seeking judicial review of the BSEA's administrative decision.  After review of the status report, the Court anticipates lifting the stay and establishing a schedule for the remainder of the case.  The parties are reminded the status report is not an opportunity to brief the resolved motions, the remaining claims, or any other matter.  Rather, the report should state the schedule proposed with a brief explanation of the reason(s) for the schedule as well as the position on whether to enter a separate and final judgment for the BSEA on the only claim naming it.

SO ORDERED.

 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge